JOURNAL ENTRY and OPINION
In this personal injury action, plaintiffs-appellants Ida and Anthony Tomaro appeal from the trial court order that granted the motions for summary judgment filed by defendants-appellees Brooklyn Shopping Center Associates ("Shopping Center") and First National Supermarkets, Inc. ("Finast")
Appellants argue summary judgment was improper, contending the evidence demonstrated injuries to business invitees from teenagers using rollerblades on the sidewalks of appellees' premises was foreseeable. Appellants further argue the trial court's failure to rule upon their motion to compel documents constituted reversible error.
This court has reviewed the record and finds the trial court's actions were appropriate; therefore, its order is affirmed.
Appellants' action against appellees resulted from an incident that occurred shortly before noon on Sunday, December 15, 1996. At that time, the Tomaros, an elderly couple who lived nearby, traveled to the Ridge Park Square in Brooklyn, Ohio in order to eat breakfast and to accomplish some errands. Ridge Park Square is owned and operated by appellee Shopping Center.
After eating, the Tomaros bought a newspaper at the Shopping Center's discount store, then decided to go to appellee Finast supermarket, also located there, in order to purchase some ground meat. The Tomaros had patronized the Finast store on a weekly basis since it opened in 1994. They had never encountered any problems shopping there previously.
Mr. Tomaro carried the grocery bag as the two exited the store. He was walking to the right of his wife. Once outside on the sidewalk in front of the store, the two turned right, the direction in which their car was parked. Thus, Mrs. Tomaro was close to the sidewalk's curb.
The Tomaros had taken only a few steps when they were startled by the sudden appearance of three teenage boys on rollerblades at the corner of the building. The boys were traveling on the sidewalk, "speeding"[1] as they came around the corner. As the boys skated, they were "going from side to side" and were "abreast" of each other, thereby occupying nearly the entire width of the sidewalk. The boys were "barreling" so fast the Tomaros had only a second to react.
Mr. Tomaro told his wife to "watch out" as he attempted to move out of the boys' way. Mrs. Tomaro also attempted to step aside; as she did so, she lost her balance and fell over the sidewalk's curb. The boys continued on their way; none of them actually had come in contact with the Tomaros. Mrs. Tomaro sustained a fractured hip and several other injuries in the fall.[2]
Subsequently, on January 24, 1997, appellants instituted this action against appellees, alleging Mrs. Tomaro's injuries were caused by appellees' negligence, both in failing to "supervise and/or monitor" their premises and in failing to "provide for the safety of those persons located on" their premises. Mr. Tomaro included a claim for loss of his wife's consortium.
Appellees each answered the complaint and filed cross-claims against each other. The record reflects the trial court thereafter set a case management schedule requiring the completion of discovery by October 15, 1997.
On October 15, 1997 appellants filed a motion to extend discovery. Appellants indicated the parties' "schedules" had disrupted the completion of necessary depositions. Subsequently, the trial court granted appellants' motion, permitting an extension of time until December 15, 1997.
On December 5, 1997 appellants filed a second request to extend discovery. Once again, appellants indicated the parties' schedules had prevented the necessary depositions from being conducted.
On December 9, 1997 the trial court issued an order granting the parties until February 15, 1998 to complete discovery. In the same journal entry, the trial court required appellees to file any dispositive motions by February 1, 1998. Appellants were ordered to file any reply by March 1, 1998.
On January 21, 1998 appellants filed a motion to compel the production of documents from the Shopping Center. Appellants asserted the Shopping Center had not responded to their requests for "complaints filed by the tenants of Ridge Park as well as * * * tenants of other shopping centers owned and operated by the exact same individuals who own and operate Ridge Park." Appellants asserted the Shopping Center's managing entity, ZM Management, "fielded" tenants' complaints and was responsible for hiring the security service for the Shopping Center. They maintained the requested documents were "relevant to the issue of notice as well as control of the premises" where the injury occurred.
Appellants attached to their motion, as exhibits, copies of the following documents: 1) the Shopping Center's answers to appellants' first set of interrogatories; 2) a portion of the deposition testimony of Carl Badowski, one of the owners of both the Shopping Center and ZM Management; 3) the management agreement between the Shopping Center ("Owner") and ZM Management ("Agent"); and 4) letters from the parties' attorneys regarding the disputed matter.
On January 27, 1998 appellant caused a subpoena to be issued to "Burns International Security Services" ("Burns") ordering Burns to produce its patrol shift logs for August 31, 1996 through December 15, 1996 and "all incident reports for the same dates."
That same day, the Shopping Center responded to appellants' motion to compel. The Shopping Center contended appellants' motion should be denied because although the motion was improper for being directed to ZM Management, a non-party, the Shopping Center had "prepared responses" to appellants' discovery requests.
On February 1, 1998 appellee Shopping Center filed its motion for summary judgment. Therein, the Shopping Center argued the evidence demonstrated that, as lessor of the premises, it was neither in possession of nor in control of the sidewalk where the injury occurred; thus, it owed no duty of care to appellants. Alternatively, the Shopping Center argued the evidence demonstrated it had breached no duty of care since it had no notice of previous problems with rollerbladers on the premises. Finally, the Shopping Center argued the presence of the rollerbladers constituted an "open and obvious" danger and, further, that Mrs. Tomaro's failure to exercise due care for her own safety was the sole proximate cause of her injuries.
The Shopping Center supported its brief with copies of the following documents: 1) the appellants' deposition transcripts; 2) the complete deposition transcript of Carl Badowski; and 3) the lease agreement between the Shopping Center and Finast.
The following day, Finast filed its own motion for summary judgment. Finast argued since the evidence demonstrated the incident was completely unforeseeable, appellants could prove neither a duty nor proximate cause; thus, they could not sustain their cause of action in negligence.
Finast attached to its motion the affidavit of John Philips, its "perishable [food] manager," who stated as follows: 1) at no time prior to Mr. Tomaro's injury was he made aware of rollerbladers on the premises; 2) no incidents relating to "in line skating" ever had been reported to Finast's management; and 3) although Finast was responsible for maintaining the sidewalk in front of the store, the "landlord" was responsible for security in the Shopping Center.
On February 24, 1998 appellants filed a Civ.R. 56(F) motion. Therein, they requested an extension of time until the trial court ruled on their motion to compel to respond to appellees' motions for summary judgment. The motion was supported by appellants' counsel' s affidavit.
The Shopping Center responded to appellants' motion with a brief in which it argued both that appellants already had been granted sufficient time in which to complete discovery and that no documents of the type appellants requested existed.
Thereafter, on March 6, 1998, appellants filed both a reply brief in support of their Civ.R. 56(F) motion and a brief in opposition to appellees' motions for summary judgment. In their opposition brief, appellants argued material issues of fact existed as to both defendants concerning the foreseeability of Mrs. Tomaro's injury and also the Shopping Center's control of the sidewalk.
Appellants attached to their brief, as exhibits, the following documents: 1) portions of appellants' deposition transcripts; 2) a portion of Carl Badowski's deposition transcript; 3) Mrs. Tomaro's affidavit, in which she essentially stated she had exercised due care for her own safety and believed "security" or "signs" should have been present on the date of the incident; 4) a portion of the deposition transcript of John Phillips;[3] 5) a photograph of Finast's entrance; 6) the lease agreement between the Shopping Center and Finast; 7) the management agreement between the Shopping Center and ZM Management; 8) a City of Brooklyn ordinance prohibiting, inter alia, rollerbladers from the sidewalks of "the Commons" Shopping Center located at "Ridge and Biddulph"; 9) the security services agreement between ZM Management and Burns; and 10) Burns' patrol shift log for the Shopping Center dated September 1, 1995 to April 6, 1996.
Subsequently, each appellee filed a reply brief but attached no new evidentiary materials.
On April 30, 1998 the trial court granted appellees' separate motions for summary judgment. It stated as the basis for its opinion, in essence, that since the evidence failed to demonstrate injuries to invitees from rollerbladers were foreseeable, neither appellee owed appellants a duty to protect them from such an injury. It further stated the Shopping Center "was not in possession of the premises and did not assume any duty to provide security on Sundays until after 12:00 noon."
Appellants have filed a timely appeal of the trial court's order. They present two assignments of error for review.
Appellants' first assignment of error states:
 THE TRIAL COURT ERRED IN GRANTING SUMMARY JUDGMENT IN FAVOR OF FIRST NATIONAL SUPERMARKETS d/b/a/ FINAST AND BROOKLYN SHOPPING CENTER ASSOCIATES.
Appellants argue summary judgment was inappropriate with regard to the Shopping Center since issues of fact remained concerning its "possession and control" of the sidewalk and its assumption of a duty to provide security there. Appellants further argue the evidence was sufficient to demonstrate appellees owed a duty to them to protect them from rollerbladers. Appellants' arguments are unpersuasive.
In reviewing a motion for summary judgment, this court conducts a de novo review of the trial court's decision. "A court reviewing the granting of a summary judgment must follow the standards set forth in Civ.R. 56(C) * * *." Aglinsky v. ClevelandBldrs. Supply Co. (1990), 68 Ohio App.3d 810.
When the court considers a motion for summary judgment, the moving party bears the initial responsibility of informing the court of the basis for the motion and identifying those portions of the record that demonstrate the absence of a genuine issue of fact as to any material element of the nonmoving party's claim.Dresher v. Burt (1996), 75 Ohio St.3d 280. If the moving party does so, the nonmoving party has a reciprocal burden to produce evidence on any issue for which that party bears the burden of production at trial. Wing v. Anchor Media, Ltd. of Texas (1991),59 Ohio St.3d 108. When the defendants, as the moving parties, furnish evidence that demonstrates the plaintiffs have not established the elements necessary to maintain their negligence action, summary judgment is properly granted in favor of defendants. Keister v. Park Centre Lanes (1981), 3 Ohio App.3d 19.
 As to the elements of a cause of action in negligence it can be said that "[i]t is rudimentary that in order to establish actionable negligence, one must show the existence of a duty, a breach of the duty, and an injury resulting proximately therefrom. (Citations omitted.)
 Thus, the existence of a duty is fundamental to establishing actionable negligence. "* * * If there is no duty, then no legal liability can arise on account of negligence. Where there is no obligation of care or caution, there can be no actionable negligence." (Footnotes omitted.) 70 Ohio Jurisprudence 3d (1986), 53-54, Negligence, Section 13. Only when one fails to discharge an existing duty can there be liability for negligence. See Di Gildo v. Caponi (1969), 18 Ohio St.2d 125, 127, 47 O.O.2d 282, 283, 247 N.E.2d 732, 733.
Jeffers v. Olexo (1989), 43 Ohio St.3d 140 at 142. (Emphasis added.)
The existence of a duty in a negligence action is a question of law for the court. Mussivand v. David (1989), 45 Ohio St.3d 314;Adelman v. Timman (1997), 117 Ohio App.3d 544 at 549. Whether a duty exists depends largely on the foreseeability of the injury to one in the plaintiff's position. Only when the injured person comes within the circle of those to whom injury may be reasonably anticipated do the defendants owe her a duty of care. Gedeon v.East Ohio Gas Co. (1934), 128 Ohio St. 335, 338. Foreseeability alone, however, is insufficient to create liability absent a special relationship between the parties. Simpson v. Big BearStores Co. (1995), 73 Ohio St.3d 130, 134. A "special relationship" exists when a duty is imposed upon one by either statute or judicial determination to act for the protection of others. Gelbman v. Second Natl. Bank of Warren (1984), 9 Ohio St.3d 77
at 79.
A review of the evidence in this case leads to the conclusion appellants did not establish the elements necessary to sustain their action since no "special relationship" existed between the Shopping Center and appellants and since Finast committed no breach of its duty of due care toward appellants.
With regard to the Shopping Center, appellants attempted to demonstrate a "special relationship" existed in two ways; viz, 1) the Shopping Center had "possession and control" of the sidewalk, thus making appellants its business invitees, and 2) the Shopping Center undertook the provision of security for the premises, including the sidewalks of its tenants, thus creating a duty to protect tenants' invitees. However, the evidence unequivocally shows neither.
The lease agreement between the Shopping Center and Finast specifically gave possession and control of the sidewalks to Finast. Badowski testified any signs posted by the Shopping Center were posted only in the common areas. Moreover, Finast's manager stated in his affidavit that the sidewalk area was exclusively under Finast's control. From these facts, it is clear the Shopping Center owed no duty to appellants; therefore, summary judgment for it was appropriate. Simpson v. Big BearStores Co., supra.
Moreover, the Shopping Center's hiring of a security firm for the premises was insufficient to create a "special relationship" with appellants. White v. Euclid Square Mall (1995), 107 Ohio App.3d 536. A review of the security contract in conjunction with Burns' patrol shift log reveals the security firm was hired to protect only the Shopping Center's interests: the focus of Burns' activities was to patrol the common areas and, further, to prevent vandalism of and theft from the tenants' premises. Thus, the Shopping Center was undertaking a duty to safeguard the tenants' business activities rather than the tenants' customers. Summary judgment for the Shopping Center was therefore appropriate on this basis as well. Simpson, supra; cf., Adelmanv. Timman, supra; see, also, Maier v. Serv-All Maintenance, Inc.
(1997), 124 Ohio App.3d 215.
With regard to Finast, appellants attempted to demonstrate Finast breached its duty of due care toward them.
 A business owner has a duty to warn or protect its business invitees from * * * acts of third parties when the business owner knows or should know that there is a substantial risk of harm to its invitees on the premises in the possession and control of the business owner. * * *
Simpson v. Big Bear Stores Co., supra, syllabus.
However, it is axiomatic that a business owner is not an insurer of his or her customers' safety. Paschal v. Rite-AidPharmacy, Inc. (1985), 18 Ohio St.3d 203; Skubovious v. Clough
(1996), 108 Ohio App.3d 316.
This court previously has held the foreseeability of harmful acts of a third party will depend upon the knowledge of the defendant/business, which must be determined from the totality of the circumstances. Reitz v. May Co. Dept. Stores (1990), 66 Ohio App.3d 188
at 192-93. Only when the totality of the circumstances is "somewhat overwhelming" will be a defendant/business be held liable for the harmful acts of a third party. Id.; see, also,Jane Doe v. System Parking. Inc. (Apr. 9, 1992), Cuyahoga App. No. 62603, unreported. This is because "no one is bound to take care to prevent consequences which, in the light of human experience, are beyond the range of probability." Gedeon v. EastOhio Gas Co., supra, at 338; see, also, Jeffers v. Olexo, supra;Feichtner v. Cleveland (1994), 95 Ohio App.3d 388.
In this case, appellants indicated they had not encountered any problems with youngsters on Finast's premises prior to the incident. Moreover, they had never "paid attention" as to whether they had seen rollerbladers near the store prior to the incident.
In his affidavit, Phillips stated he was never made aware that rollerbladers had been on Finast's premises. Furthermore, Phillips testified he was aware of no incidents involving youngsters causing trouble either inside or outside of the store. Phillips' testimony was supported by Burns' patrol shift log. The log contained a notation of only one instance of "kids on skates and skateboard" in the three months prior to the incident. The notation indicated only that the "kids" were near some "carts." Thus, there is no indication they actually were on Finast's premises. Moreover, Burns reported only to ZM Management; therefore, there was no indication Finast ever was informed of even this incident.
In short, since not a shred of evidence was presented that would lead to an inference that Finast breached its duty of care toward appellants, summary judgment for Finast also was appropriate. Skubovious v. Clough, supra; White v. Euclid SquareMall, supra.
Accordingly, appellants' first assignment of error is overruled.
Appellants' second assignment of error states:
 THE TRIAL COURT ABUSED ITS DISCRETION IN FAILING TO RULE UPON PLAINTIFFS' MOTION TO COMPEL PRODUCTION OF DOCUMENTS FROM BROOKLYN SHOPPING CENTER ASSOCIATES.
Appellants argue the information they sought from the Shopping Center was critical to sustaining their cause of action. They contend the trial court acted improperly, therefore, when it decided appellees' summary judgment motions without first issuing a ruling on appellants' motion to compel. This argument is unpersuasive.
In a case in which a trial court fails to rule upon a motion filed before final judgment, it is presumed the trial court has overruled the motion. State ex rel. The V Companies v. Marshall
(1998), 81 Ohio St.3d 467.
The trial court has broad discretion in controlling the discovery process. Stegawski v. Cleveland Anesthesia Group, Inc.
(1987), 37 Ohio App.3d 78. Absent an abuse of that discretion, an appellate court may not disturb the trial court's decision on discovery matters. Vinci v. Ceraolo (1992), 79 Ohio App.3d 640. There is no indication the trial court abused its discretion in this case.
A review of the Shopping Center's responses to appellants' requests for documentation of any incident reports directed to the Shopping Center from its tenants reveals no such documents were in existence. This is obvious from a perusal of both Badowski's testimony and the Shopping Center's responses to appellants' third request for production of documents, which stated in pertinent part as follows:
 * * * ZM Management is not a party to the instant lawsuit such that a Rule 34 documents production request may be directed to ZM. Without waiving the objections, Defendant is not aware of any complaints filed by any of the tenants at Ridge Park Square in regard to roller skating, skateboarding, or rollerblading by individuals within the shopping center. Further answering, see deposition testimony of Carl Badowski taken November 26, 1997 in this matter.
(Emphasis added.)
Since appellants clearly could obtain no such documents, the trial court did not abuse its discretion in granting summary judgment to appellees without first issuing a ruling on appellants' motion to compel.
Accordingly, appellants' second assignment of error also is overruled.
The order of the trial court is affirmed.
It is ordered that appellees recover of appellants their costs herein taxed.
The Court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this Court directing the Cuyahoga County Court of Common Pleas to carry this judgment into execution.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
LEO M. SPELLACY, P.J. and JAMES D. SWEENEY. J CONCUR
 __________________ JUDGE KENNETH A. ROCCO
[1] Quotes are taken from the evidentiary material filed in the trial court.
[2] The record reflects that although Mr. Tomaro also lost his balance and fell during the incident, he was not injured in the fall.
[3] Appellants filed the complete transcript contemporaneously with their opposition brief.