OPINION
Appellant, Christopher R. Simpson, appeals the Warren Municipal Court's judgment entry finding him guilty of assault, in violation of Warren Ordinance § 537.03.
The transcript reveals that the trial court heard the testimony of six witnesses at a bench trial held on October 14, 1998. Through this testimony, it is clear that Heather Williams ("Heather"), a seventeen-year-old girl, was telephoned by Anthony Fortney ("Fortney"), who was twenty-two years old at the time, to attend a party at appellant's residence. Heather lived across from Fortney's sister's house and apparently had given her phone number to him. They had spoken only a few times prior to his phone call. Heather, her brother Colt Williams ("Colt"), who was sixteen years of age, and Bruce Vonbergen ("Vonbergen"), who was seventeen, arrived at appellant's residence at approximately 11:00 p.m. on April 10, 1998. Appellant lived in Jamestown Village, located at 2644 Lexington, Warren, Ohio.
Accounts as to what occurred at the party differ greatly. However, there is no contradictory testimony as to the fact that the only people at the party were Heather, Colt, Vonbergen, Fortney, Fortney's girlfriend, and appellant. Heather testified for appellee, the city of Warren, that while at the party, appellant grabbed her breasts and refused to leave her alone for a few minutes. As to that event, Colt testified that he saw appellant leaning on her with his arms around her for more than a minute, and heard his sister telling him to get off her. Appellant denied having touched Heather's breasts or having words with her. This event was claimed to have occurred at approximately 11:30 p.m.
The next important discrepancy concerns whether alcohol was being consumed at appellant's place. Vonbergen testified that he consumed gin and saw ten to twenty bottles of gin in the apartment, and that everyone other than Heather was drinking. Heather testified that everyone other than she and Colt was drinking. Colt indicated that he had one glass of some unidentifiable red liquor. Appellant testified that no alcohol was consumed the night of the incident. Finally, Fortney claimed that no alcohol was being consumed because everyone was only drinking Coca-Cola. In addition, Fortney stated that Vonbergen originally appeared at the party smelling and acting as if he was drunk. Vonbergen denied having consumed alcohol prior to the party. Heather testified that Bruce had not been drinking prior to going over to appellant's apartment.
The record reveals that Heather and Colt left the party at or around 12:00 a.m., due to a midnight curfew. They asked Vonbergen to leave with them, but he declined because he was playing a game of cards with appellant. Shortly before leaving, Colt overheard a phone call in which either appellant or Fortney told someone to come over because Vonbergen was still there. He also claimed that appellant and Vonbergen had been arguing over their card game. Within five minutes after leaving, Heather had called home and gotten a message that Vonbergen's mom wanted him to come home. Heather then used her cell phone to call appellant's place and asked to talk to Vonbergen. She testified that appellant refused to let her talk to Vonbergen because he was claimed to have passed-out on the couch. Both of them continued to drive around, thinking that something could be wrong, but decided to go home. They arrived at home somewhere around 12:30 to 1:00 a.m. and went to bed.
According to Vonbergen's testimony, when Heather and Colt left, Fortney and appellant gave Vonbergen two blue pills, which caused him to vomit, and prevented him from moving. At that point, Vonbergen stated that appellant, Fortney, and Fortney's girlfriend began kicking him and yelling profanities. After the attack occurred, Vonbergen laid on the floor while his attackers went upstairs. He eventually got up, called Heather and Colt, asked them to come get him, and left appellant's apartment.
Heather and Colt got a call from Vonbergen at approximately 3:00 a.m., saying that he had gotten beaten-up, and asking for them to come get him. Vonbergen said that he would be walking around outside appellant's residence. Thus, Heather and Colt drove to appellant's apartment, and on the way, came across appellant walking his dog. Appellant was asked where Vonbergen was, and was told that he had started walking toward Giant Eagle supermarket. Within five minutes, Heather and Colt discovered Vonbergen walking toward the bridge located on Tod Avenue around 3:00 to 3:30 a.m. They found him about three streets away from appellant's apartment. Appellant and Fortney denied giving any pills to Vonbergen and denied beating him.
Upon finding Vonbergen, it was apparent that he had been severely beaten. At that point, Vonbergen was taken to a friend's house to talk to the friend's stepfather about what had occurred. He was then taken to Heather and Colt's home, at which time their mother ordered them to take Vonbergen to the emergency room at Trumbull Memorial Hospital, located in Trumbull County, Ohio.
On May 1, 1998, Vonbergen's mother filed a complaint in Warren Municipal Court, alleging that appellant had assaulted her son, in violation of Warren Ordinance § 537.03. A complaint also was filed against Fortney and the two actions were tried on a consolidated basis with a separate charge of assault against co-defendant Fortney. Appellant pleaded not guilty to the charge. A bench trial in the matter was held on October 14, 1998. In a finding and sentencing hearing conducted by the trial court on October 16, 1998, appellant was found guilty as charged. During the proceeding, the court indicated that there would be no mitigation of the sentence because appellant had been placed on probation with the court on two occasions for underage alcohol violations, which were both first-degree misdemeanors.
Consequently, appellant was sentenced to serve one hundred eighty days in jail, with ninety days suspended, and five years probation. A fine of $250 also was imposed.
The entire sentence was stayed pending this appeal. Appellant filed this appeal on October 19, 1998, and now raises the following assignments of error:
 "[1.] The trial court erred in failing to dismiss the charge against [appellant].
 "[2.] Failure of the state to prove venue raises reasonable doubt and the conviction must be overturned."
In the first assignment of error, appellant avers that the assault charge against him should have been dismissed because there only was Vonbergen's unreliable and self-serving testimonial evidence presented that he committed the assault. Moreover, appellant claims that he and Fortney presented testimony that Vonbergen was not beaten by him. Thus, appellant avers that the contradictory testimony precludes a finding that he assaulted Vonbergen beyond a reasonable doubt. Ultimately, appellant is arguing that the trial court's conviction of appellant was against the manifest weight of the evidence.
The standard used for evaluating a manifest weight argument in a criminal matter was set forth in State v. Martin (1983),20 Ohio App.3d 172, 175, which states:
 "The court, reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the [trier of fact] clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. The discretionary power to grant a new trial should be exercised only in the exceptional case in which the evidence weighs heavily against the conviction."
Concerning the issue of assessing witness credibility, the general rule of law is that "[t]he choice between credible witnesses and their conflicting testimony rests solely with the finder of fact and an appellate court may not substitute its own judgment for that of the finder of fact." State v. Awan (1986),22 Ohio St.3d 120, 123. Indeed, the factfinder is free to believe all, part, or none of the testimony of each witness appearing before it. Hill v. Briggs (1996), 111 Ohio App.3d 405, 412; Statev. Caldwell (1992), 79 Ohio App.3d 667, 679. If evidence is susceptible to more than one construction, reviewing courts must give it the interpretation that is consistent with the verdict and judgment. White v. Euclid Square Mall (1995), 107 Ohio App.3d 536,539. Finally, in State v. Long (1998), 127 Ohio App.3d 328,335, the Fourth District Court of Appeals expounded upon the reason why deference must be given to the factfinder's assessment of a witness' credibility when it wrote that the trial court is in the best position to "view the witnesses who testified below and observe their demeanor, gestures, and voice inflections, and use those observations in weighing the credibility of the proffered testimony."
In the case sub judice, the trial judge assumed the role of the trier of fact by virtue of the matter being tried to the bench. Accordingly, pursuant to Long and Awan, the trial judge was in the best position to observe the witnesses and determine which testimony was most credible. As indicated in Briggs and Caldwell, the trial judge was free to believe all, part, or none of the testimony presented by Heather, Colt, Vonbergen, Fortney, and appellant.
In light of the fact that appellant was found guilty of assaulting Vonbergen, despite contradictory testimony elicited by appellant and Fortney, it is clear that the trial judge determined that the testimony of Heather, Colt, and Vonbergen was more credible. Based on the evidence before this court, there is no indication that the trial court erred in making its credibility assessments. Therefore, as set forth in Awan, Long, and EuclidSquare Mall, we must defer to the trial court's finding that appellant assaulted Vonbergen.
Additionally, after accepting the testimonial evidence in a manner which supports the trial court's finding of guilt, this court is unable to conclude that the trial court clearly lost its way and created such a manifest miscarriage of justice that his conviction must be reversed and a new trial ordered. Indeed, the evidence in this matter weighs heavily in favor of the conviction beyond a reasonable doubt. Thus, appellant's first assignment of error is not well-taken.
In the second assignment of error, appellant contends that appellee failed to prove venue because, although appellee's witnesses testified that the events occurred in Jamestown Village, there was no indication in which city, county, or state Jamestown Village is located.
Crim.R. 18(A) states that "[t]he venue of a criminal case shall be as provided by law." Section 10, Article I of the Ohio Constitution fixes venue as the following: ". . . In any trial, in any court, the party accused shall be allowed . . . a speedy public trial by an impartial jury of the county in which the offense is alleged to have been committed. . . ." See, also, State v. Headley
(1983), 6 Ohio St.3d 475, 477. Accordingly, the rule of law in Ohio is that "the place of trial is to be where the offense occurred." Headley, 6 Ohio St.3d at 477. The rule regarding venue for criminal matters is safeguarded in R.C. 2901.12. Id.
R.C. 2901.12(A) states, "[t]he trial of a criminal case in this state shall be held in a court having jurisdiction of the subject matter, and in the territory of which the offense or any element of the offense was committed."
In a criminal prosecution, the State must prove venue at trial unless it is waived by the defendant. State v. Draggo (1981),65 Ohio St.2d 88, 90. Waiver will occur if the defense does not properly object, by the conclusion of the trial, to the State's failure to prove venue. State v. Dumas (Feb. 18, 1999), Franklin App. No. 98AP-581, unreported, at 3, 1999 WL 77196; In reHackathorn (Dec. 15, 1998), Belmont App. No. 97 BA 29, unreported, at 2, 1998 WL 896468. However, venue is not a material element of any charged offense; instead, venue and the elements of the offense charged are separate and distinct. Id. The State need not prove venue in express terms so long as it is established by all the facts and circumstances in the case. Headley,6 Ohio St.3d at 477. Furthermore, the right to assert that the State did not prove venue cannot be advanced for the first time on appeal.State v. Loucks (1971), 28 Ohio App.2d 77, 78, citing State v.Duling (1970), 21 Ohio St.2d 13.
In the present matter, and contrary to appellant's assertion, there was testimony by Vonbergen, Heather, and Colt that they attended a party at appellant's residence. Furthermore, Vonbergen stated that appellant's apartment was in Jamestown Village. Heather testified that appellant's apartment was on Lexington Street. Importantly, in his direct examination, appellant admitted that he resided at 2644 Lexington, Warren, Ohio. Thus, there was testimony concerning the city and state in which the events took place. Finally, the trial court possessed venue over the instant matter, since the beating, giving rise to the instant cause of action, took place in the city of Warren, in Trumbull County, Ohio. Therefore, appellee met its burden of proving proper venue by establishing it through all the facts and circumstances of the case, as permitted by the Ohio Supreme Court's holding in Headley.
In addition, appellant waived the ability to object to an alleged failure by appellee to prove venue because he raised the issue only after the trial was concluded, in contravention of the law set forth in Dumas and In re Hackathorn. Indeed, the issue was raised only at the trial court's finding and sentencing hearing. Thus, even if appellant sought to initiate an objection on the basis that appellee had failed to prove proper venue, the time for a directed verdict had clearly expired after the defense had rested. Finally, as stated in Loucks, appellee is precluded from now advancing an objection on that basis because venue can not be raised for the first time on appeal. Accordingly, appellant's second assignment of error is without merit.
For the foregoing reasons, appellant's assignments of error are not well-taken, and the judgment of the Warren Municipal Court is affirmed.
 ___________________________ PRESIDING JUDGE DONALD R. FORD
NADER, J., O'NEILL, J., concur.