[Cite as *Columbus v. Gunthorp*, 2022-Ohio-138.]

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

| | | |
|---|---|---|
| City of Columbus, | : | |
| Plaintiff-Appellee, | : | No. 21AP-313 |
| | | (M.C. No. 2021TRD-112990) |
| v. | : | |
| | | (ACCELERATED CALENDAR) |
| William Gunthorp, | : | |
| Defendant-Appellant. | : | |

D E C I S I O N

Rendered on January 20, 2022

**On brief:** *Zachary M. Klein,* City Attorney, *Melanie R. Tobias-Hunter, Orly Ahroni,* and *Matthew D. Sturtz,* for appellee. **Argued:** *Matthew D. Sturtz.*

**On brief:** *William Gunthorp*, pro se. **Argued:** *William Gunthorp.*

APPEAL from the Franklin County Municipal Court

BEATTY BLUNT, J.

{¶ 1} Defendant-appellant, William Gunthorp, appeals from the May 27, 2021 Judgment Entry issued by the Franklin County Municipal Court finding him guilty of failure to yield the right-of-way when turning left, in violation of Columbus City Code ("C.C.C.") 2131.17(a), and imposing a fine of $100 plus court costs. For the following reasons, we affirm.

**I. Facts and Procedural History**

{¶ 2} On May 1, 2021, appellant was cited for failing to yield the right-of-way when turning left, in violation of C.C.C. 2131.17(a), a minor misdemeanor. He pleaded not guilty to the offense.

{¶ 3}   On May 27, 2021, a trial to the court commenced at which three witnesses gave testimony: Aaliyah Hashim, the driver of the opposing vehicle that was hit by appellant; Warren Perkins, an eyewitness in another vehicle who is a Columbus Police Officer and was off duty at the time of the accident; and Officer Joseph Ribar, the Columbus Police Officer who was dispatched in response to the report of an injury accident.  Appellant did not give testimony, although he did submit several exhibits of photographs of his vehicle showing the damage it sustained in the accident, which were admitted into evidence.

{¶ 4}   Ms. Hashim testified that on May 1, 2021, at approximately 9:36 a.m., she was operating a company vehicle in her employment capacity as a driver.  She exited from a nearby freeway onto south Cleveland Avenue and proceeded toward the intersection of Community Park Drive, where the traffic signal was "yellow."  (Tr. at 26.)  Ms. Hashim testified that she was traveling the speed limit at either 40 or 45 m.p.h. and that she knew she was not speeding because the vehicle she was operating would "tell" her if she were speeding, and it did not do so.[1]  *Id.* at 31.

{¶ 5}   Ms. Hashim further testified that as she proceeded through the intersection, appellant turned left in front of her, and she struck his vehicle.  *Id.* at 26-27.  She could not avoid the collision and had she stopped, she would have been hit from behind by another vehicle.  *Id.* at 26.  Ms. Hashim stated she was helped from her vehicle by an off-duty police officer, and she was taken to the hospital where she later spoke with law enforcement.  *Id.* at 28.

{¶ 6}   Mr. Perkins testified that on the date and time in question, he was off duty but heading into work.  *Id.* at 35-36.  He was stopped in his vehicle at a red light on Community Park Drive facing east at the intersection with Cleveland Avenue.  *Id.* at 35, 37.  One vehicle was stopped in front of him at the intersection.  *Id.* at 36.  Mr. Perkins saw the traffic light controlling southbound traffic on Cleveland Avenue immediately before the collision.  *Id.* at 37-38.  Although he initially testified the light was "orange," he clarified that he meant it was "yellow."  *Id.* at 37-39, 43-45.

{¶ 7}   Mr. Perkins further testified that he observed Ms. Hashim's vehicle travel south on Cleveland Avenue and enter the intersection. *Id.* at 37.  He initially stated that,

---

[1] There was no further testimony explaining how or in what manner the vehicle would "tell" its operator that she was speeding.

based on his visual estimation and aural observation, Ms. Hashim was "not traveling the posted speed limit" and that he estimated her speed at between 50 and 60 m.p.h. *Id.* at 37, 42. However, he later stated that he could not "confirm or deny" whether Ms. Hashim's speed was greater than the posted limit. *Id.* at 44. He further testified that in his opinion, Ms. Hashim was driving legally to make it through the intersection on the yellow light. *Id.* at 44-45. As Ms. Hashim traveled through the intersection, Mr. Perkins observed appellant turn left in front of her, causing a collision. *Id.* at 36-38, 41, 43. The light was still yellow at the time of the collision. *Id.* at 38-39.

{¶ 8}    Mr. Perkins stated that after the collision, he attended to Ms. Hashim. *Id.* at 39-40. He also made contact with appellant at the scene and spoke with responding law enforcement. *Id.* at 35-36, 41.

{¶ 9}    Officer Ribar testified that on the date and time in question, he was dispatched to the intersection of Cleveland Avenue and Community Park Drive on the report of an injury accident. *Id.* at 6, 8. At the scene, he observed that road conditions were "dry," and it was a "sunny day." *Id.* at 8. He spoke to appellant and Mr. Perkins. *Id.* at 8, 9. Appellant stated he "began to turn" left to head west onto Community Park Drive when Ms. Hashim struck his vehicle. *Id.* at 9. Appellant informed him that at the time he was turning, he did not have a "green arrow" to turn left. *Id.* at 12. Following his investigation at the scene of the collision, Officer Ribar cited appellant after concluding that Ms. Hashim had the right-of-way. *Id.* at 11-12.

{¶ 10}    At the conclusion of the trial, the court issued its verdict finding appellant guilty of the cited offense of failing to yield the right-of-way when turning left. Specifically, the court found:

> My ruling is as follows. The Defendant and the opposing driver entered the intersection on yellow and as the Columbus City Code states, the driver turning left has to yield to oncoming traffic and the Defendant did not do so and therefore I rule in favor of the Plaintiff, the citation stands. The fine is $100 plus court costs.

(Aug. 19, 2021 App.R. 9(C)(1) Statement.) On May 27, 2021, the trial court issued a judgment entry which reflected its verdict and imposed a fine of $100 plus costs. (May 27, 2021 Jgmt. Entry.)

{¶ 11} Appellant now timely appeals.

## II. Assignment of Error

{¶ 12} Appellant has assigned one assignment of error for our review:

> The trial court erred in finding appellant guilty of the traffic offense of failure to yield when turning left when the opposing driver forfeited the right of way by speeding and travelling unlawfully.

## III. Law and Analysis

### A. Standard of Review

{¶ 13} Appellant challenges his conviction based on the evidence adduced at trial but does not specify whether his challenge is to the sufficiency of the evidence or the manifest weight of the evidence.

{¶ 14} "Sufficiency of the evidence is a legal standard that tests whether the evidence introduced at trial is legally sufficient to support a verdict." *State v. Cassell*, 10th Dist. No. 08AP-1093, 2010-Ohio-1881, ¶ 36, citing *State v. Thompkins*, 78 Ohio St.3d 380, 386 (1997). In reviewing a challenge to the sufficiency of the evidence, an appellate court must determine " 'whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt.' " *State v. Robinson*, 124 Ohio St.3d 76, 2009-Ohio-5937, ¶ 34, quoting *State v. Jenks*, 61 Ohio St.3d 259 (1991), paragraph two of the syllabus. A reviewing court will not disturb a verdict unless, after viewing the evidence in the light most favorable to the prosecution, the court finds "that reasonable minds could not reach the conclusion reached by the trier of fact." *State v. Treesh*, 90 Ohio St.3d 460, 484, 2001-Ohio-4, citing *Jenks* at 273.

{¶ 15} In a review for sufficiency of the evidence, an appellate court does not engage in a determination of the witnesses' credibility. *State v. Woodward*, 10th Dist. No. 03AP-398, 2004-Ohio-4418, ¶ 16, citing *State v. Goff*, 82 Ohio St.3d 123, 139, (1998). Rather, we essentially assume the state's witnesses testified truthfully and determine whether the testimony satisfies each element of the offense. *Id.*, citing *State v. Gore*, 131 Ohio App.3d 197, 200-01 (7th Dist.1999). Further, the testimony of one witness, if believed by the trier of fact, is sufficient to support a conviction. *State v. Winston*, 10th Dist. No. 16AP-664,

2018-Ohio-2525, ¶ 21, citing *State v. Strong*, 10th Dist. No. 09AP-874, 2011-Ohio-1024, ¶ 42.

{¶ 16} Comparatively, "[w]hile sufficiency of the evidence is a test of adequacy regarding whether the evidence is legally sufficient to support the verdict as a matter of law, the criminal manifest weight of the evidence standard addresses the evidence's effect of inducing belief." *Cassell* at ¶ 38, citing *State v. Wilson*, 113 Ohio St.3d 382, 2007-Ohio-2202, ¶ 25, citing *Thompkins* at 386. When presented with a challenge to the manifest weight of the evidence, an appellate court must review the entire record, weigh the evidence and all reasonable inferences, consider the credibility of witnesses, and determine whether, in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed, and a new trial ordered. *Thompkins* at 387. Reversal by an appellate court of a conviction as being against the manifest weight of the evidence should be reserved for only the most " 'exceptional case in which the evidence weighs heavily against the conviction.' " *Id.*, quoting *State v. Martin*, 20 Ohio App.3d 172, 175 (1st Dist.1983); *State v. Strider-Williams*, 10th Dist. No. 10AP-334, 2010-Ohio-6179, ¶ 12.

{¶ 17} In addressing a manifest weight of the evidence argument, we are able to consider the credibility of the witnesses. *State v. Cattledge*, 10th Dist. No. 10AP-105, 2010-Ohio-4953, ¶ 6. However, in conducting our review, we are guided by the presumption that the jury, or the trial court in a bench trial, "is best able to view the witnesses and observe their demeanor, gestures and voice inflections, and use these observations in weighing the credibility of the proffered testimony." *Id.*, quoting *Seasons Coal Co. v. Cleveland*, 10 Ohio St.3d 77, 80 (1984). Accordingly, we afford great deference to the trier of fact's determination of witness credibility. *State v. Redman*, 10th Dist. No. 10AP-654, 2011-Ohio-1894, ¶ 26, citing *State v. Jennings*, 10th Dist. No. 09AP-70, 2009-Ohio-6840, ¶ 55. Thus, it is well-settled that "[t]he choice between credible witnesses and their conflicting testimony rests solely with the finder of fact and an appellate court may not substitute its own judgment for that of the finder of fact." *State v. Awan*, 22 Ohio St.3d 120, 123 (1986). The finder of fact is free to believe all, part, or none of the testimony of each witness appearing before it. *State v. Cline*, 10th Dist. No. 14AP-610, 2015-Ohio-4036, ¶ 9, citing *Hill v. Briggs*, 111 Ohio App.3d 405, 412 (10th Dist.1996). "If evidence is susceptible to more

than one construction, reviewing courts must give it the interpretation that is consistent with the verdict and judgment." *Id.*, citing *White v. Euclid Square Mall*, 107 Ohio App.3d 536, 539 (8th Dist.1995). "Mere disagreement over the credibility of witnesses is not sufficient reason to reverse a judgment." *Id.*, citing *State v. Wilson*, 113 Ohio St.3d 382, 2007-Ohio-2202, ¶ 24.

{¶ 18} Finally, we observe that although sufficiency and manifest weight are different legal concepts, in conducting the analysis, manifest weight will subsume sufficiency in that a finding that a conviction is supported by the manifest weight of the evidence necessarily includes a finding of sufficiency. *State v. McCrary*, 10th Dist. No. 10AP-881, 2011-Ohio-3161, ¶ 11, citing *State v. Braxton*, 10th Dist. No. 04AP-725, 2005-Ohio-2198, ¶ 15. "[T]hus, a determination that a conviction is supported by the weight of the evidence will also be dispositive of the issue of sufficiency." *Id.*

## B. Discussion

{¶ 19} With the preceding discussion of the standard of review in mind, we now turn to appellant's assignment of error. C.C.C. section 2131.17 addresses the right-of-way when turning left and provides as follows:

> (a) The operator of a vehicle intending to turn to the left within an intersection or into an alley, private road, or driveway shall yield the right-of-way to any vehicle approaching from the opposite direction whenever the approaching vehicle is within the intersection or so close to the intersection, alley, private road, or driveway as to constitute an immediate hazard.
>
> (b) Except as otherwise provided in this division, whoever violates this section is guilty of a minor misdemeanor. If, within one (1) year of the offense, the offender previously has been convicted of or pleaded guilty to one (1) predicate motor vehicle or traffic offense, whoever violates this section is guilty of a misdemeanor of the fourth degree. If, within one (1) year of the offense, the offender previously has been convicted of two (2) or more predicate motor vehicle or traffic offenses, whoever violates this section is guilty of a misdemeanor of the third degree.

In turn, "right-of-way" is defined as the "right of a vehicle * * * to proceed uninterruptedly in a lawful manner in the direction in which it * * * is moving in preference to another vehicle * * * approaching from a different direction into its * * * path." C.C.C. 2101.32(1).

{¶ 20} " 'The law gives to the operator of the vehicle upon the highway a shield, an absolute right to proceed uninterruptedly. He forfeits the shield if he fails to proceed in a lawful manner.' " *Cline*, 2015-Ohio-4036 at ¶ 19, quoting *Beers v. Wills*, 172 Ohio St. 569, 571 (1962). Thus, "a driver can forfeit the right of way if he unlawfully operates his vehicle at a speed in excess of the posted limit." *Id.*, citing *Steubenville v. Doty*, 7th Dist. No. 94-J-75 (Nov. 22, 1995). Nevertheless, it is the law in Ohio that " 'evidence of speed in excess of a posted speed limit alone is not conclusive that a vehicle is proceeding unlawfully and has forfeited its right of way.' " *Id.*, quoting *In re Neill*, 160 Ohio App.3d 439, 2005-Ohio-1696, ¶ 13. (Em.p.h.asis omitted.) Furthermore, " '[w]hether a driver's speed is excessive or unreasonable under the circumstances [so as to be proceeding unlawfully] is a question of fact.' " *Id.*, quoting *Upper Arlington v. Conley,* 10th Dist. No. 06AP-332, 2006-Ohio-6648 ¶ 16, citing *Columbus v. Cantwell*, 10th Dist. No. 80AP-915 (May 14, 1981).

{¶ 21} In this case, we find there is sufficient evidence to support appellant's conviction and further, the conviction is not against the manifest weight of the evidence, as explained as follows.

{¶ 22} In essence, appellant's position is that the trial court should have found that the evidence showed Ms. Hashim forfeited her right-of-way because she was speeding, and thus operating her vehicle unlawfully, and therefore appellant had no duty to yield to her when he was turning left. But the court was not required to make this finding based on the evidence presented.

{¶ 23} As set forth above, whether a driver's speed is excessive or unreasonable under the circumstances so as to constitute proceeding unlawfully is a question of fact to be determined by the fact finder, which in this case was the trial court. We acknowledge there was somewhat conflicting testimony on the issue of whether Ms. Hashim was speeding. Ms. Hashim testified that she was traveling at about 40-45 m.p.h., and that she knows she was not speeding because her company vehicle would have alerted her if her speed exceeded the posted speed limit. (Tr. at 31.) In contrast, Mr. Perkins, the off-duty police officer who witnessed the accident testified on direct that he thought Ms. Hashim was travelling greater than "the posted speed limit", at about 50-60 m.p.h. *Id.* at 37. On cross-examination, however, Perkins conceded that he could not "confirm or deny" Ms. Hashim's speed while travelling through the intersection. *Id.* at 44-45. He also testified that it was

his opinion, based on his training and experience a police officer, that Ms. Hashim was driving legally to make it through the intersection on the yellow light. *Id.* at 44. Finally, Officer Ribar testified that at the scene he spoke with both appellant and Mr. Perkins, and that based on his investigation at the scene he concluded that Ms. Hashim had the right-of-way and therefore, he cited appellant. *Id.* at 11-12. The foregoing testimony, although somewhat conflicting, was entirely for the trial court as the fact finder to resolve.

{¶ 24} Moreover, there was no evidence presented at trial as to what the posted speed limit was at the intersection where the accident occurred on the date in question. Appellant argues on appeal that the speed limit was 35 m.p.h. based on C.C.C. 2133.03(B)(4), but he submitted nothing at trial to prove this point, nor was there testimony from any other witnesses on this subject. Furthermore, as argued by the appellee, even if it is true that Ms. Hashim was operating her vehicle above the posted speed limit, the trial court, as the finder of fact, was free to determine that her speeding did not arise to proceeding unlawfully so as to forfeit her right-of-way.

{¶ 25} In summation, considering all of the evidence together, the trial court did not clearly lose its way in concluding appellant was required to yield to Ms. Hashim's right-of-way when he was attempting to turn left across Ms. Hashim's lane of travel, and appellant's conviction is supported by sufficient evidence and is not against the manifest weight of the evidence. Therefore, the trial court did not err in finding appellant guilty of the traffic offense of failure to yield when turning left.

{¶ 26} Accordingly, appellant's sole assignment of error is overruled.

## IV. Disposition

{¶ 27} For the foregoing reasons, we overrule appellant's sole assignment of error and affirm the judgment of the Franklin County Municipal Court.

*Judgment affirmed.*

KLATT and NELSON, JJ., concur.

NELSON, J., retired, of the Tenth Appellate District, assigned to active duty under the authority of the Ohio Constitution, Article IV, Section 6(C).

_____