[Cite as *Boyd v. Lourexis, Inc.*, 2012-Ohio-4595.]

# Court of Appeals of Ohio

### EIGHTH APPELLATE DISTRICT
### COUNTY OF CUYAHOGA

---

### JOURNAL ENTRY AND OPINION
### No. 98028

---

## DEBORAH BOYD

### PLAINTIFF-APPELLANT

vs.

## LOUREXIS, INC., ET AL.

### DEFENDANTS-APPELLEES

---

## JUDGMENT:
## AFFIRMED

---

Civil Appeal from the
Cuyahoga County Court of Common Pleas
Case No. CV-742333

**BEFORE:** Blackmon, A.J., Stewart, J., and E. Gallagher, J.

**RELEASED AND JOURNALIZED:** October 4, 2012

**ATTORNEYS FOR APPELLANT**

Frank Gallucci, III
Michael D. Schorge
David E. Gray, II
Plevin & Gallucci Co.
55 Public Square, Suite 2222
Cleveland, Ohio 44113

Paul W. Flowers
Paul W. Flowers Co., L.P.A.
Terminal Tower, 35th Floor
50 Public Square
Cleveland, Ohio 44113

**ATTORNEYS FOR APPELLEES**

**For Lourexis, Inc., Et al.**

Robert H. Willard
Grey W. Jones & Associates
529 S. 3rd Street
Columbus, Ohio 43215

**For U.S. Security Associates, Inc.**

Tammy G. Gibson
Tammy G. Gibson Co., LPA
38118 Second Street
Willoughby, Ohio 44094

**For U.S. Security Analysis, Inc.**

David A. Valent
Reminger Co.
1400 Midland Building
101 Prospect Avenue, West
Cleveland, Ohio 44115

PATRICIA ANN BLACKMON, A.J.:

**{¶1}** Appellant Deborah Boyd ("Appellant"), as Administrator of the estate of her son, Johnny Boyd, Jr., appeals the trial court's decision granting summary judgment in favor of appellees Lourexis, Inc., Millennia Housing Management Ltd., U.S. Security Analysis, Inc., and U.S. Security Associates, Inc. Boyd assigns the following errors for our review:

> **I. As a matter of law, the trial court erred by finding that no genuine issues of material fact existed upon the claims that had been brought against defendant-appellees, Lourexis, Millennia, and U.S. Security Analysis.**
>
> **II. The trial court further erred, as a matter of law, by granting summary judgment in favor of defendant-appellee USSA upon the workplace intentional tort theory of recovery.**

**{¶2}** Having reviewed the record and pertinent law, we affirm the trial court's decision. The apposite facts follow.

**{¶3}** On November 28, 2008, Johnny Boyd, Jr.'s life came to a tragic end. At the time, Boyd, then 22 years old, was employed by U.S. Security Associates ("USSA") as a security guard at an assisted living facility owned by Lourexis, Inc. ("Lourexis") and managed by Millennia Housing Management, Ltd. ("Millennia").

**{¶4}** During Boyd's shift that night, a van, with four occupants, pulled into the complex and proceeded to park in a space reserved for the handicapped. Boyd exited the building and inquired why they were parked in the handicapped space and one of the occupants indicated they were waiting for someone.

**{¶5}** Boyd returned to the building, but some time later exited the building and began walking towards his car when the van began driving towards him with the side door ajar. Boyd began to run when he saw one of the van's occupants fire three shots, one of which, fatally struck Boyd in the head. The assailant took Boyd's keys and then stole his car.

**{¶6}** On May 18, 2009, appellant, as administrator of her son's estate, filed a wrongful death and survivorship action against Lourexis, Millennia, and USSA. In the complaint, appellant alleged that defendants' failure to warn Boyd about the high degree of criminal activity around their facility, plus their failure to provide tools, weapons, and protective gear led to her son's demise. Appellant later added Security Analysis, Inc. ("Security Analysis") as a defendant. On September 7, 2010, appellant voluntarily dismissed the complaint.

**{¶7}** On November 29, 2010, appellant re-filed her complaint against defendants, but added Associated Estates Management ("AEM") as another defendant. In the re-filed complaint, appellant specifically alleged that defendants knew or should have known about the violent criminal activity in the area, and owed a duty to protect and warn Boyd, but failed to do so.

**{¶8}** The defendants submitted their respective answers denying liability and presenting various affirmative defenses. After significant motion practice, all the defendants filed motions for summary judgment. On October 13, 2011, approximately one month prior to the dispositive motions deadline, appellant identified Gregory M.

Baepler, the former Commander of the Cleveland Police Department, as her security expert and provided each defendant with a copy of his report. On October 31, 2011, appellant filed a motion for extension of time to respond to defendants' respective motions for summary judgment.

{¶9} Subsequently, all of the defendants filed motions in limine to exclude appellant's security expert's report, which the trial court granted. The trial court denied appellant's motion for extension of time and on December 5, 2011, appellant filed a consolidated memorandum in opposition to defendants' motions for summary judgment. Between February 17 and 21, 2012, the trial court granted defendants' respective motions for summary judgment.

## Summary Judgment

{¶10} In the first assigned error, appellant argues that the trial court erred by granting summary judgment in favor of defendants, Lourexis and Millennia.

{¶11} We review an appeal from summary judgment under a de novo standard of review. *Baiko v. Mays*, 140 Ohio App.3d 1, 746 N.E.2d 618 (8th Dist.2000), citing *Smiddy v. The Wedding Party, Inc.*, 30 Ohio St.3d 35, 506 N.E.2d 212 (1987); *N.E. Ohio Apt. Assn. v. Cuyahoga Cty. Bd. of Commrs.*, 121 Ohio App.3d 188, 699 N.E.2d 534 (8th Dist.1997). Accordingly, we afford no deference to the trial court's decision and independently review the record to determine whether summary judgment is appropriate.

**{¶12}** Under Civ.R. 56, summary judgment is appropriate when, (1) no genuine issue as to any material fact exists, (2) the party moving for summary judgment is entitled to judgment as a matter of law, and (3) when viewing the evidence most strongly in favor of the nonmoving party, reasonable minds can reach only one conclusion that is adverse to the nonmoving party.

**{¶13}** The moving party carries an initial burden of setting forth specific facts that demonstrate his or her entitlement to summary judgment. *Dresher v. Burt*, 75 Ohio St.3d 280, 292-293, 662 N.E.2d 264 (1996). If the movant fails to meet this burden, summary judgment is not appropriate; if the movant does meet this burden, summary judgment will be appropriate only if the nonmovant fails to establish the existence of a genuine issue of material fact. *Id*. at 293.

**{¶14}** A plaintiff alleging a wrongful death claim on a theory of negligence must show that the defendant owed a duty to the decedent, a breach of that duty, and that the breach of that duty was the proximate cause of the plaintiff's injuries. *Rodgers v. Holland Oil Co.*, 9th Dist. No. 23718, 2007-Ohio-6049, citing *Littleton v. Good Samaritan Hosp. & Health Ctr.*, 39 Ohio St.3d 86, 92, 529 N.E.2d 449 (1988). The existence of a duty is fundamental to establishing negligence. If there is no duty, then no liability arises on account of negligence. *Hake v. Delpine*, 11th Dist. No. 2002-T-0010, 2003-Ohio-1591. Whether a duty is owed is a question of law for the court to determine on a case-by-case basis. *Reitz v. May Co. Dept. Stores*, 66 Ohio App.3d 188, 192, 583 N.E.2d 1071 (8th Dist.1990).

{¶15} The existence of a duty depends upon the foreseeability of the injury. *Stepanyan v. Kuperman*, 8th Dist. No. 88927, 2007-Ohio-4068. In order to determine what is foreseeable, a court must determine whether a reasonably prudent person would have anticipated that an injury was likely to result from the performance or nonperformance of an act. *Cox v. MetroHealth Med. Ctr. Bd. of Trs.*, 8th Dist. No. 96848, 2012-Ohio-2383, citing *Menifee v. Ohio Welding Prods, Inc.,* 15 Ohio St.3d 75, 472 N.E.2d 707 (1984).

{¶16} The duty to protect invitees from the criminal acts of third parties does not arise if the business "does not, and could not in the exercise of ordinary care, know of [the] danger which causes injury to [the] business invitee." *Masek v. Warren Redevelopment & Planning Corp.*, 11th Dist. No. 2009-T-0059, 2010-Ohio-819, quoting *Howard v. Rogers*, 19 Ohio St.2d 42, 249 N.E.2d 804 (1969), at paragraph three of the syllabus.

{¶17} The foreseeability of criminal acts depends upon the knowledge of the defendant-business based on the totality of the circumstances. *Id*., citing *White v. Euclid Square Mall*, 107 Ohio App.3d 536, 669 N.E.2d 82 (8th Dist.1995). In other words "the totality of the circumstances" must be somewhat overwhelming before a business will be held to be on notice of and therefore under the duty to protect against the criminal acts of others. *Reitz, supra*, at 193-194. *See also White, supra*; *Cole v. Pine Ridge Apts. Co. II*, 11th Dist. No. 2000-L-020, 2001-Ohio-8788, at ¶15; *Rozzi v. The Cafaro Co.*, 11th Dist. No. 2001-T-0090, 2002-Ohio-4817.

**{¶18}** In the instant case, the tragic circumstances of Boyd's death were not foreseeable and the defendants did not breach any duty owed to Boyd. Although appellant argues that the assisted living facility was located in a high crime area and also attempted to have an expert report admitted to support her argument, no evidence was presented of prior similar criminal acts in the vicinity of the complex. Courts are reluctant to impose such a duty when no evidence of prior, similar occurrences appears on the record. *Mosby v. Sanders*, 8th Dist. No. 92605, 2009-Ohio-6459, citing *Brake v. Comfort Inn*, 11th Dist. No. 2002-A-0006, 2002-Ohio-7167.

**{¶19}** Kathleen Leonard, Service Coordinator for Lourexis and Millennia, who has been employed for 14 years at the location where Boyd was fatally shot, testified as follows at her deposition:

> **Q.** **Do you know what precipitated raising the issue in June 2007 to hire security for that facility?**
>
> **A.** **We had been having a few cars damaged in the parking lot and/or stolen.**
>
> **Q.** **Other than cars being damaged or stolen, were there any other issues that arose either around that time or shortly before that you remember precipitating the need to start contemplating security?**
>
> **A.** **We had a — on a few occasions, we had, like, homeless people coming and trying to get in the building, particularly in the winter. They would be found by residents or staff, you know, like on the couch in the community room, that kind of thing. And we also had a resident assaulted in the parking lot.**
>
> **Q.** **Was it a violent assault, if you remember?**
>
> **A.** **It was a purse snatching. I think he may have knocked her down and taken her purse.**

**Q.**   Do you know if it was an armed robbery or assault?

**A.**   I don't know that.   I don't think it was.

**Q.**   Prior to June 12th of 2007, were there any suspicion of drug issues that gave rise to discussions about security?

**A.**   We had a couple tenants that were suspected of, you know, doing drugs or having drugs brought in or — yeah.

**Q.**   * * * [B]ut were the drug concerns also part of the general concerns that gave rise to discussions about hiring security, in addition to what you just previously told me?

**A.**   Not so much. Because what we did was contact the Cleveland police office for that.   And we had discussed with them, you know, what should be done.   And we gave them keys to the buildings so that they would be able to come undercover to try to sort out who and what and where and when the drug issues were.   Leonard Depo. 18-19.

{¶20} Here, although appellant alleges that the assisted living facility, where Boyd was killed, is located in a high crime area, no evidence was presented to show that defendants could have reasonably anticipated that Boyd would have been brutally killed on the grounds of the facility. As indicated in the above excerpt, and elsewhere in the record, there is no indication that defendants had notice of a previous similar incident that would have required them to take extra precaution.   Leonard testified that the crimes were limited to breaking into cars, the homeless trying to get into the lobby during winters, and an isolated incident of purse snatching.

{¶21}   Thus, although located in what appellant characterize as a "high crime" area, this fact by itself would not establish a duty on defendants' part to have anticipated the violent, unprovoked brutal attack, which led to Boyd's death. *See, e.g., Stone v. Shell*

*Oil Co.*, 8th Dist. No. 68807, 1996 Ohio App. LEXIS 1867 (May 9, 1996).    In addition, Boyd worked as a security guard at this location for more than a year before he was killed, yet never expressed any fear for his safety to his employer.

{¶22}   Thus, under the totality of the circumstances, and being sensitive to the tragic situation, the defendants Lourexis and Millennia owed no duty to Boyd.   As such, the trial court properly granted summary judgment in favor of these defendants. Accordingly, we overrule the first assigned error.

## Workplace Intentional Tort

{¶23}   In the second assigned error, appellant argues the trial court erred in granting summary judgment in favor of USSA upon the workplace intentional tort theory of recovery.

{¶24}   The test for an employer intentional tort was set forth in *Fyffe v. Jeno's, Inc.*, 59 Ohio St.3d 115, 570 N.E.2d 1108 (1991), in which the Court identified three elements an employee must prove: (1) knowledge by the employer of the existence of a dangerous process, procedure, instrumentality, or condition within its business operation; (2) knowledge by the employer that if the employee is subjected by his employment to such dangerous process, procedure, instrumentality, or condition, then harm to the employee will be a substantial certainty; and (3) that the employer, under such circumstances, and with such knowledge, did act to require the employee to continue to perform the dangerous task.   *Id*. at paragraph one of the syllabus.

**{¶25}** To withstand a motion for summary judgment, the employee must set forth specific facts that raise a genuine issue as to each element of the *Fyffe* three-prong test. *Richardson v. Welded Tubes, Inc.*, 11th Dist. No. 2007-A-0069, 2008-Ohio-2920, citing *Van Fossen v. Babcock & Wilcox Co.*, 36 Ohio St.3d 100, 522 N.E.2d 489 (1988), at paragraph seven of the syllabus. Because we find it to be dispositive, we focus on the second element of the *Fyffe* test. The *Fyffe* court explained the knowledge and substantial certainty requirements as follows:

> **[P]roof beyond that required to prove negligence and beyond that to prove recklessness must be established. Where the employer acts despite his knowledge of some risk, his conduct may be negligence. As the probability increases that particular consequences may follow, then the employer's conduct may be characterized as recklessness. As the probability that the consequences will follow further increases, and the employer knows that injuries to employees are certain or substantially certain to result from the process, procedure or condition and he still proceeds, he is treated by the law as if he had in fact desired to produce the result. However, the mere knowledge and appreciation of a risk-something short of substantial certainty is not intent.** *Fyffe* at paragraph two of the syllabus.

**{¶26}** On summary judgment, the second element of the *Fyffe* test requires that appellant present evidence of a genuine issue of material fact as to whether the employer had knowledge that harm was substantially certain to occur. Appellant argues that she met this burden because she demonstrated that the assisted living facility was located in a high crime area. In addition, appellant alleged that USSA failed to properly train, support, and protect Boyd.

**{¶27}** However, the record reflects that Boyd was not required to confront the likes of the assailants he encountered on the night in question. The record established

that Boyd's job as a security guard was to observe and report. Gerald P. Sorenson, the Branch Manager of USSA's Northeast Ohio office, testified as follows:

> **Q. Is there any point at which a security guard — it's appropriate for him to confront someone?**
>
> **A. Our officers are trained to observe and to report. If it is necessary to confront someone, we pick the phone up and dial 911 and involve the police department.** Sorenson Depo. 67
>
> **\* \* \***
>
> **Q. Would it have been appropriate for Johnnie Boyd to leave the premises of these apartments during the middle of his shift?**
>
> **A. It would not have been appropriate.**
>
> **Q. Would it have been appropriate for Johnnie Boyd to enlist the aid of someone else on the property who was armed while Johnnie Boyd approached a van in the parking lot?**
>
> **A. It would have been appropriate for him to pick the phone up and call 911.** Sorenson Depo. 69.

{¶28} As can be gleaned from the above excerpt, Boyd was not expected to confront suspicious individuals, but only to observe and report said activity. In addition, Sorenson testified that the parking lot is equipped with several cameras and is monitored from inside the building. Sorenson Depo. 83. Given that the parking lot could be monitored from inside the building, it was not necessary for Boyd to have gone outside to confront the individuals who fatally shot him. Instead, Boyd was required to call the police once he observed the suspicious van parked in the handicapped lane.

{¶29} Under these circumstances, actual knowledge of the substantial certainty of harm is not proven. *Wilson v. Superior Founds.*, *Inc.*, 12th Dist. No. CA2007-03-043,

2008-Ohio-1359. *See also Spurlock v. Buckeye Boxes, Inc.*, 10th Dist. No. 06AP-291, 2006-Ohio-6784. Consequently, under these circumstances, appellant has failed to meet her burden of production to overcome summary judgment on the employer intentional tort claim. For the foregoing reasons, the trial court properly granted summary judgment in favor of USSA. Accordingly, we overrule the second assigned error.

**{¶30}** Judgment affirmed.

It is ordered that appellees recover from appellant costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate be sent to said court to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____
PATRICIA ANN BLACKMON, ADMINISTRATIVE JUDGE

MELODY J. STEWART, J., and
EILEEN A. GALLAGHER, J., CONCUR